UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TIMOTHY AARON JOHN, TRAVIS RAY JOHN, TIFFANY LYNNAE JOHN, TYRONE FRED JOHN, SHIRLEY L. PALMER, LESLIE L. PALMER, JALEEN M. FLOWERS, and JESSE WADE PALMER,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>THE SECRETARY OF THE INTERIOR, through its Acting Assistant Secretary; BUREAU OF INDIAN AFFAIRS, its officers, servants, agents, employees, representatives, and attorneys;<br><br>　　　　　Defendants. | 3:14-cv-00247-LRH-VPC<br><br>ORDER |

Before the Court is Defendants Secretary of the Interior and Bureau of Indian Affairs' (collectively "Defendants") Motion to Voluntarily Remand Matter to Secretary of the Interior. Doc. #4.[1] Plaintiffs Timothy Aaron John, Travis Ray John, Tiffany Lynnae John, Tyrone Fred John, Shirley L. Palmer, Leslie L. Palmer, Jaleen M. Flowers, and Jesse Wade Palmer (collectively "Plaintiffs") filed an Opposition (Doc. #7), to which Defendants Replied (Doc. #10).

**I.    Factual Background**

In 2004, Congress passed the Western Shoshone Claims Distribution Act ("the Act") to resolve the United States' failure to pay the Western Shoshone Nation ("Western Shoshone") amounts that the United States had promised pursuant to a 1863 treaty between the United States

---

[1] Refers to the Court's docket number.

and Western Shoshone. Doc. #1 ¶¶14, 16. Charged with adopting guidelines for what historical data would be used to determine whether individuals were entitled to compensation under the Act, the Bureau of Indian Affairs ("BIA") determined that people with twenty-five percent Western Shoshone blood would be eligible for distribution of the funds. *Id.* ¶¶18-19.

Plaintiffs are all grandchildren of Fred Hicks Sr. and Leona Mina Dyer, and great-grandchildren of Frank and Hattie Dyer. *Id.* ¶¶3, 27. Plaintiffs submitted documentation to prove that they are twenty-five percent Western Shoshone to the BIA. *Id.* ¶20. This included Census data showing that in 1940, Frank and Hattie Dyer were listed as "Full Blood Shoshone," as were their children Dorothy, Agnes, Johnson, George, Lillie, Marie, and Mike. *Id.* ¶23. The same Census listed Albert Hicks as "Full Shoshone," his wife Lorraine as "Full Paiute," and their children Theodore, Albert Jr., Thelma, Lillie, Fred, Floyd, Donald, and Richard one half Shoshone. *Id.* ¶24.

On November 3, 2010, the BIA made a preliminary determination that Hattie Dyer was one half Shoshone. *Id.* ¶26. Plaintiffs provided more information regarding their ancestry to the BIA on November 15, 2010, including documents showing that Hattie Dyer was in fact "Full Blood Shoshone." *Id.* ¶27. Plaintiffs state that the evidence submitted to BIA shows that Plaintiffs' common grandparents Fred Hicks Sr. and Leona Mina Dyer were each half Shoshone, which would be "sufficient to pass on Western Shoshone lineage" of twenty-five percent for each Plaintiff. *Id.* ¶28. On June 21, 2012, the BIA Washington D.C. office confirmed the regional office's determination that Hattie Dyer was only half Shoshone. *Id.* ¶29. On October 22, 2013, Leona Hicks wrote to the BIA to inquire why Hattie Dyer's blood status had changed, and requesting documentation regarding Hattie Dyer's blood status. *Id.* ¶30. The Superintendent of the Western Nevada BIA responded that the Shoshone Tribe held the enrollment records, and that the BIA could not produce the requested documentation. *Id.* ¶31. Nonetheless, Plaintiffs state that they submitted the Fallon Paiute Shoshone Records to the BIA, and that they confirm that Hattie Dyer is "Full Blood Shoshone." *Id.* ¶32. Individuals who were eligible for payment under the Act received payments totaling $35,137.93 each. Doc. #4 at 4.

Plaintiffs filed this claim on May 12, 2014, asserting causes of action for (1) deprival of due process of a fundamental right, (2) denial of equal protection under the law, and (3) violation of the Administrative Procedure Act ("APA"). Doc. #1 at 7-8. Plaintiffs seek a declaration that the BIA's decision constituted a deprivation of due process under the Constitution, and that the decision to deny benefits because Plaintiffs were less than twenty-five percent Western Shoshone was arbitrary and capricious. *Id.* at 9-10.

**II.   Legal Standard**

This action is brought pursuant to the Administrative Procedures Act ("APA"). Under the APA, a reviewing court may set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). "A federal agency may request remand in order to reconsider its initial action." *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Id.* A federal court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Rather, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* Remand is favored so that an agency "can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its discretion exceeds the leeway that the law provides." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002). In fact, remand is appropriate even "when it is clear that [a court] would be compelled to reverse the [agency's] decision" if the agency made a certain finding. *Id.* at 15.

**III.   Discussion**

Defendants request that the Court remand this matter "for further development of the pertinent Administrative Record and for agency reconsideration of the eight plaintiffs' eligibility for inclusion on the Western Shoshone Judgment roll." Doc. #4 at 5. Plaintiffs argue that remand

3

would only cause unnecessary delay, and that "Plaintiffs should not have to wait another two years and be required to again seek assistance from this Court when the Agency issues another arbitrary and capricious 'final' decision." Doc. #7 at 4. Plaintiffs add that Defendants' request for voluntary remand is in bad faith "[i]n light of the fact that Plaintiffs' ancestry wont change and the documents will be the same" upon Defendants' reconsideration. *Id.* at 7.

Plaintiffs have not shown that Defendants' request for voluntary remand was frivolous or in bad faith. Additionally, the type of evidence at issue, or the lack of new evidence, is not a primary consideration for a court's determination of whether a defendant's motion for voluntary remand is frivolous or made in bad faith. *See Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (granting defendant's motion for voluntary remand because the defendant "recognized the merits of the petitioners' challenges and ha[d] been forthcoming in the[] proceedings"). Defendants' statement that any additional evidence submitted by Plaintiffs regarding their blood status "will be freshly evaluated in the context of the agency's issuance of a new decision regarding the plaintiffs' eligibility for inclusion on the Western Shoshone Judgment roll" further belies Plaintiffs' claims that Defendants' motion is frivolous or made in bad faith. *See* Doc. #10 at 2. The Ninth Circuit has acknowledged that "administrative agencies have an inherent authority to reconsider their own decision, since the power to decide in the first instance carries with it the power to reconsider." *Kelch v. Dir. Nev. Dep't of Prisons*, 10 F.3d 684, 687 (9th Cir. 1993) (quoting *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)). Accordingly, the Court grants Defendants' motion for voluntary remand, noting that it will still have an opportunity to review the agency's decision once the agency has reconsidered its initial determination.

///
///
///
///
///

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Voluntary Remand (Doc. #4) is GRANTED.

IT IS SO ORDERED.

DATED this 5th day of February, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE