UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TIMOTHY AARON JOHN, et al.,

    Plaintiffs,

v.

THE SECRETARY OF THE INTERIOR,

    Defendant.

Case No. 3:14-CV-247-LRH

ORDER

Plaintiffs Timothy Aaron John, Travis Ray John, Tiffany Lynnae John, Tyrone Fred John, Shirley L. Palmer, Leslie L. Palmer, Jaleen M. Flowers, and Jesse Wade Palmer have filed a motion for summary judgment. (ECF No. 35). Defendant, the Secretary of the Interior (the "Secretary"), filed a response, which also functioned as a cross-motion for summary judgment. (ECF Nos. 37–38). For the reasons stated below, the Court denies plaintiffs' motion for summary judgment and grants the Secretary's motion for summary judgment.

**I. Factual Background and Procedural History**

In 1977, the Indian Claims Commission awarded a diverse group of Native Americans, later identified as the "Western Shoshone Identifiable Group," $26 million in compensation for land encroachment during the nineteenth century. *W. Shoshone Identifiable Group v. U.S.*, 40 Ind. Cl. Comm. 318, 453 (1977); *Shoshone Tribe v. U.S.*, 11 Ind. Cl. Comm. 387, 416 (1962). The award was set aside in an interest-bearing trust account in the U.S. Treasury pending the formulation of a distribution plan. Because the affected groups could not come to a consensus on

how to distribute the funds, the sole authority of crafting a distribution plan remained with Congress. 25 U.S.C. §1402(c), (d).

In 2004, Congress enacted the Western Shoshone Claims Distribution Act, Pub. L. 108-270, 118 Stat. 805 ("Distribution Act"). The Distribution Act required the Secretary to establish a roll of eligible individuals and distribute the funds as equally as practicable to those on the roll. An individual would only be eligible for a share of the funds if that person was a United States citizen, had not received a per capita payment from another similar judgment, and was at least 1/4 blood quantum Western Shoshone. Congress did not condition eligibility on official membership with any one particular federally-recognized tribe, but rather on having the minimum 1/4 blood quantum. On September 28, 2012, the judgment roll was completed, and disbursement of the funds was completed a few days later.

Plaintiffs themselves are two groups of cousins – Jennifer John, the mother of plaintiffs Timothy Aaron John, Travis Ray John, Tiffany Lynnae John, and Tyrone Fred John, is the sister of Dorothy Palmer, the mother of plaintiffs Shirley L. Palmer, Leslie L. Palmer, Jaleen M. Flowers, and Jesse Wade Palmer. All plaintiffs claim Western Shoshone ancestry through their respective mothers. This dispute centers around the ancestry of plaintiffs' great-great grandmother, Hattie Dyer, and whether or not she was full Western Shoshone. If Hattie Dyer had full Western Shoshone ancestry, then plaintiffs would have the required 1/4 Western Shoshone blood quantum necessary for inclusion in the judgment roll. If Hattie Dyer had anything other than full Western Shoshone ancestry, then plaintiffs would not have the required 1/4 blood quantum and would thus be excluded from the roll.

Plaintiffs filed their first complaint in May 2014 (ECF No. 1) and amended it once in October 2014 (ECF No. 14). In their amended complaint, plaintiffs state that in November 2010, the Regional Office of the Bureau of Indian Affairs ("BIA") in Phoenix, Arizona (an agency of the U.S. Department of the Interior) made a preliminary determination that Hattie Dyer was 1/2 Western Shoshone by blood quantum, rendering plaintiffs ineligible for the judgment roll. (ECF No. 14 at 6). Plaintiffs had apparently believed that Hattie Dyer had been full Western Shoshone. In June 2012, the Washington D.C. office of the BIA reaffirmed the Phoenix office's

determination. Plaintiffs allege that Leona Hicks, the maternal grandmother to some of the plaintiffs, wrote to the BIA in October 2013 and January 2014 to question the decision, but never received a satisfactory answer as to why her "blood quantum had been altered without notice to her." (*Id*. at 6–7).

On February 5, 2015, the Court granted the Secretary's motion to voluntarily remand plaintiffs' case back to the BIA for reconsideration of the agency's initial determination that Hattie Dyer was only 1/2 Western Shoshone. (ECF No. 18). On November 6, 2017, the BIA sent letters to each of the plaintiffs notifying them that it had found Hattie Dyer to be half Western Shoshone and half Paiute, thereby denying their appeal. (ECF No. 24-1). The letters explained that in 1975, Hattie Dyer applied to be included in the Northern Paiute Judgment, but her initial application was rejected. (*Id*. at 3). Her daughter appealed the decision (Hattie Dyer had passed away in 1976), "providing evidence that Hattie Dyer was 1/2 Paiute and 1/2 White," and the BIA consequently approved her application. (*Id*.). The letters also quote a March 1978 probate order dispensing with Hattie Dyer's property: "[A]lthough the records reflect that Hattie Dyer is a Shoshone Indian, testimony adduced at the hearing established that she was of Paiute Indian descent and such testimony further establishes the probable reason why the records are apparently in error." (*Id*.). Reviewing that evidence, along with the rest of the evidence available, the BIA concluded that plaintiffs did not meet the 1/4 blood quantum threshold.

Plaintiffs and the Secretary have filed cross-motions for summary judgment on plaintiffs' request for judicial review of the BIA's non-eligibility determination regarding their inclusion on the Western Shoshone Judgment roll.

**II. Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn from them, must be read in the light most favorable to the party

opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248. Even so, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the non-moving party. *See id*. at 252.

### III. Discussion

Plaintiffs and the Secretary both seek summary judgment on the issue of whether the Secretary's decision to deny plaintiffs admission to the Western Shoshone roll was arbitrary and capricious. Under the Administrative Procedures Act ("APA"), a District Court may set aside an agency decision only if the court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). An agency decision is "arbitrary and capricious" if the agency (1) relied on a factor that Congress did not intend it to consider; (2) failed to consider an important factor or aspect of the problem; (3) failed to articulate a rational connection between the facts found and the conclusions made; (4) supported the decision with a

rationale that runs counter to the evidence or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise; or (5) made a clear error in judgment. *Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150–51 (9th Cir. 2009). At all times, the plaintiff carries the burden of showing that any decision or action made by the agency was arbitrary and capricious. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).

Plaintiffs argue that the Secretary's determination was capricious because "[he] did not follow [his] own adopted policy to rely upon census rolls and Tribal enrollment documents as reliable determination of the blood quantum of the Western Shoshone." (ECF No. 35 at 15). They argue that the Secretary "discounted Census Rolls and Tribal membership documentation, the sworn statement of Hattie Dyer and relied upon an unsworn statement of a ninety seven year old [sic] woman in notes that are not under oath." (*Id.*). Plaintiffs also state that the Secretary "arbitrarily" chose to consider extrinsic evidence that was not disclosed to their entire family. (*Id.* at 19).[1] In response, the Secretary states that in reaching his decision, he considered a wide variety of evidence, including the "conflicting historical information," "prior tribal ancestry determinations, reliable tribal resources, census records of related persons, and historical statements of tribal ancestry by [Hattie Dyer]." (ECF No. 38 at 13). The Secretary also considered birth records, death records, probate records, and family tree records. (*Id.* at 8). The Secretary further argues that plaintiffs should not be allowed to claim that Hattie Dyer is full Western Shoshone because in 1977 their family members successfully argued on her behalf for her to be deemed 1/2 Paiute. (*Id.* at 13–14). Plaintiffs' families subsequently profited financially from Hattie Dyer's inclusion on the Northern Paiute Judgment roll. (*Id.* at 14). As the Court previously stated, whether plaintiffs have the required 1/4 Western Shoshone blood quantum is dependent entirely on whether Hattie Dyer was full Shoshone.

Plaintiffs are essentially asking this Court to reweigh the evidence contained within the administrative record, ignore the evidence that does not favor their claim, and rule against the Secretary's evaluation of the evidence. It is well-established that a District Court cannot reweigh

---

[1] Plaintiffs also complain that the Secretary repeatedly failed to provide the documentation supporting his decision to deny them a place in the Western Shoshone roll. (ECF No. 30 at 16). The Court makes note of it here because it is not germane to the Court's analysis.

the evidence before the agency. *Lockheed Shipbuilding v. Director*, *OWCP*, 951 F.2d 1143, 1146 (9th Cir. 1991). Indeed, the agency's factual findings are reviewed on the substantial evidence standard, which means that the Court will not disturb the findings unless the evidence presented would compel a reasonable fact finder to reach a contrary result. *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009). Additionally, where the agency has relied on "relevant evidence [such that] a reasonable mind might accept as adequate to support a conclusion," its decision is supported by "substantial evidence." *Bear Lake Watch, Inc. v. Fed. Energy Regulatory Comm'n*, 324 F.3d 1071, 1076 (9th Cir. 2003).

Plaintiffs are correct in asserting that there is some evidence in the record that supports a finding that Hattie Dyer was full Western Shoshone. For instance, although the administrative record contains census data from 1934 listing Hattie Dyer as full Paiute, census data from 1937 and 1940 list her as full Shoshone. (AR at 167).[2] There is also a letter from the BIA dated September 9, 1999, confirming that Hattie Dyer's 1940 census data lists her as full Shoshone. (AR at 670). But the mere presence of some evidence in the record supporting plaintiffs' position does not mean the Secretary's decision to rule against them was not supported by substantial evidence. If the evidence contained in the administrative record is susceptible to more than one rational interpretation, a reviewing court may not substitute its judgment for that of the agency. *Hensala v. Dep't of Air Force*, 343 F.3d 951, 955–56 (9th Cir. 2003). That is certainly the case here. The administrative record contains evidence that Hattie Dyer was at least one-half Paiute, such as her daughter's application on her behalf to be included in the Northern Paiute Judgment fund (AR at 40), a letter from the BIA reversing its earlier decision and adding Hattie Dyer to the fund (AR at 45), and Hattie Dyer's probate records (AR at 27). There is more than enough evidence in the record for the Secretary to have reasonably concluded that Hattie Dyer was not full Shoshone. *See, e.g., Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1036 (9th Cir. 2010) (courts "must defer to a reasonable agency action 'even if the administrative record contains evidence for and against

---

[2] The Secretary submitted the administrative record to the Court in the form of a large PDF document. The Court will refer to documents contained with in administrative record with the designation "AR" along with the PDF page number.

6

its decision.'") (quoting *Trout Unlimited v. Lohn*, 559 F.3d 946, 958 (9th Cir. 2009)). Therefore, the Secretary's eligibility determination is supported by substantial evidence.

Plaintiffs' complaint that the Secretary "discounted" the census rolls and tribal membership documentation is misguided. (ECF No. 35 at 15). The Secretary is tasked with reviewing "all documentation" when making an eligibility determination, not just census rolls and tribal membership papers. *See* 25 C.F.R. §61.11(a). This documentation includes, but is not limited to, birth certificates, death certificates, baptismal records, copies of probate findings, and affidavits. 25 C.F.R. §61.9. Moreover, there is no evidence within the record to suggest that the Secretary "discounted" either the available census rolls or tribal membership documentation. On the contrary, the Secretary references the contradictory census records in his denial letters to the plaintiffs, noting how some censuses show no tribal affiliation, one shows full Paiute, and others show full Shoshone. (ECF No. 24-1 at 3). Given the contradictory nature of the census records and Hattie Dyer's later assertion in 1975 that she was at least part Paiute, it was reasonable for the Secretary to not base his determination solely off the census records. As for the tribal membership documentation, membership in any one particular federally-recognized tribe is not required or even dispositive for roll eligibility. *See* 25 C.F.R. §61.4(k)(1). Even so, the Secretary noted how the 1978 membership roll of the Paiute-Shoshone Tribe of the Fallon Reservation and Colony indicated that Hattie Dyer was 1/2 Paiute. (ECF No. 24-1 at 3). The evidence within the record belies plaintiffs' claims that the Secretary "discounted" the census data and tribal membership rolls.

Finally, the Court finds that the Secretary's explanation for denying eligibility was rationally connected to the facts contained within the administrative record. In the denial letters sent to plaintiffs, the Secretary explained why he was not relying solely on the census records and what evidence he considered to be the strongest in determining that Hattie Dyer was not full Shoshone. (ECF No. 24-1 at 3). Specifically, he highlighted the fact that both Hattie Dyer (with her initial application) and her daughter argued before the BIA that Dyer was 1/2 Paiute and how Dyer's 1978 probate records indicated that she was "of Paiute Indian descent." (*Id.*). The Secretary's full reasoning in the denial letter is not only more than sufficient to satisfy the APA's

"brief statement" requirement, but it also demonstrates that there is a clear connection between the facts found and the decisions made by the Secretary.

The Court does not make any determination today as to whether Hattie Dyer was full Shoshone, 1/2 Paiute, or any combination thereof. Rather, the sole job with which the Court has been tasked is reviewing the Secretary's determination to see if it was reached in accordance within the provisions of the APA. As explained above, it has been.

### IV. Conclusion and Order

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (ECF No. 35) is **DENIED**.

IT IS FURTHER ORDERED that the Secretary's motion for summary judgment (ECF No. 38) is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk **ENTER JUDGMENT** in favor of the Secretary and against plaintiffs.

IT IS SO ORDERED.

DATED this 22nd day of October, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE